**UNITED STATES DISTRICT COURT**
**District of New Jersey**

**CHAMBERS OF**
**JOSE L. LINARES**
JUDGE

**MARTIN LUTHER KING JR.**
**FEDERAL BUILDING & U.S. COURTHOUSE**
**50 WALNUT ST., ROOM 5054**
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

NOT FOR PUBLICATION

LETTER-OPINION AND ORDER

September 30, 2005

Dennis T. Kearney
PITNEY HARDIN, LLP
P.O. Box 1945
Morristown, NJ 07962-1945
(Attorney for Plaintiffs)

Gita F. Rothschild
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(Attorney for Defendant)

Marjorie Press Lindblom
Sudwiti Chanda
KIRKLAND & ELLIS, LLP
153 East 53rd Street
New York, NY 10022
(Of Counsel for Defendant)

   Re: Anthem Worldwide Lines, Inc., et al. v. Colgate-Palmolive Company
      Civil Action No.: 04-6243 (JLL)

Dear Counsel:

  This matter having been opened to the Court by way of Defendant Colgate-Palmolive

Company's (hereinafter "Colgate" or "Defendant") motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6), contending that Plaintiffs Anthem Worldwide Lines, Inc. (hereinafter "Anthem Worldwide"), Anthem World Transport, Inc. (hereinafter "AWT"), and Access Transportation and Logistics, Inc. (hereinafter "Access") (hereinafter collectively referred to as "Plaintiffs"), failed to state a cognizable claim under which relief is warranted.  See Fed. R. Civ. P. 12(b)(6).  This Court must consider whether the present facts alleging breach of contract, lack of good faith and fair dealing, and unjust enrichment, and the inferences drawn from those allegations, provide a basis for recovery against Colgate.  Colgate requests the dismissal of nine out of the eleven counts alleged in Plaintiffs' complaint.  The Court decides this motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.  For the reasons that follow, Defendant Colgate's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is DENIED.

## BACKGROUND FACTS

This action is a contract case involving four different contracts.  Each contract will be discussed in brief below.

**A.    The 1994 Global Contract (Counts I and II)**

On January 1, 1994, Anthem Puerto Rico entered into a four-year Freight Contract Agreement (the "1994 Global Contract") with Colgate.  (Plaintiff's Amended Complaint (Pl.'s Am. Compl. ¶ 10)).  The 1994 Global Contracted stipulated that Anthem Puerto Rico would exclusively provide all of the international freight transportation needs of Colgate and all of its subsidiary companies.  (Id. ¶ 11).  On or about January 1, 1998, the contract was renewed for a new exclusive four year Freight Contract Agreement (the "1998 Global Contract").  (Id. ¶ 12).  On

October 5, 2001, Colgate provided a thirty days written notice to Anthem[1] of Colgate's intention to terminate the 1998 Global Contract and on November 5, 2001, the contract was officially terminated.  (Id. ¶ 20-21).

**B.     The Domestic Contract (Counts III, IV, V and VI)**

On August 15, 2002, Access entered into a Contract for Transportation Services (the "Domestic Contract") with Colgate.  (Id. ¶ 35).  Both parties agreed that Access would provide certain freight transportation services on Colgate's behalf in the Commonwealth of Puerto Rico.  (Id. ¶ 36).  Pursuant to this contract, Colgate agreed to pay certain per case charges on shipments consisting of less than one full truck load.  (Id. ¶ 45).  On January 29, 2004, Access warned Colgate that the per case charge would be increased to $0.54 for certain specified deliveries.  (Id. ¶ 46).  Access complied.

On September 10, 2004, Access again advised Colgate that the per case charge would be increased from $0.54 to $0.60 on the specified routes, effective September 15, 2004.  (Id. ¶ 48).  Colgate verbally agreed to the new amount but Access contends that Colgate did not comply and continued to pay the old amount of $0.54 instead of the $0.60.  (Id. ¶ 50).  On October 8, 2004, Colgate provided written notice to Anthem of Colgate's intention to terminate the Domestic Contract, effective as of April 1, 2005.  (Id. ¶ 52).

**C.     The Ocean Freight Contract (Counts VII and VIII)**

On November 11, 2003, Access entered into an Ocean Freight Transportation

---

[1] In Plaintiff's Amended Complaint, Anthem Worldwide and Anthem Puerto Rico are consolidated and referred to as "Anthem." (Pl.'s Am. Compl. ¶ 16).  Plaintiffs argue that Anthem Worldwide and Anthem Puerto Rico are both parties in interest to the 1998 Global Contract.  Infra.

Management Services Agreement (the "Ocean Freight Contract") with Colgate. Pursuant to this contract, Access agreed to provide management transportation logistics services[2] for shipments between the United States and Puerto Rico. (Id. ¶ 67). On or about May, 2004, Colgate began to deduct $20,000.00 per month from payments due to Access for Access' failure to return containers to port in a timely manner. (Id. ¶ 72). Access objected the deduction of the demurrage charges because they contend Colgate is liable. Access argues that Colgate had knowledge of the location and usage of the containers and Colgate failed to advise Access that the containers in question were available to be returned to port. (Id. ¶ 74-76). On October 8, 2004, Colgate provided a written notice to Access that the Ocean Freight Contract would be terminated, effective April 1, 2005. (Id. ¶ 78).

**D.     The Drop Lot Agreement (Counts IX, X and XI)**

On December 15, 1998, Access entered into a Drop Lot Agreement (the "Drop Lot Agreement") with Colgate. (Id. ¶ 86). Pursuant to the terms of this contract, Access agreed "to provide manpower and the necessary equipment to move, at Colgate's request, empty and/or loaded trailers to and from the loading dock and in and around the yard located at Colgate's warehouses." (Id. ¶ 87). Furthermore, the Drop Lot Agreement stipulated that Access charge all participating carriers[3] $35.00 for each loaded inbound trailer dropped at the lot and/or moved

---

[2] Services included consolidation, containers, ocean, rail and domestic land transportation. (Id. ¶ 67). In other words, Anthem would move the containers from port to Colgate's facilities and upon delivery of the containers, Colgate would load the containers with goods for over land delivery. (Id. ¶ 68-69). Thereafter, at Colgate's request, Access would arrange for the delivery of the loaded containers from Colgate's facilities to Colgate's customers. (Id. ¶ 70).

[3] All "participating carriers" utilized by Colgate were required to participate in and utilize the drop lot program pursuant to the terms of the Drop Lot Agreement. (Id. ¶ 89).

outbound from the loading dock.  This $35.00 charges were being reimbursed to the participating carriers by Colgate and/or being treated as a "pass through" to Colgate.  (Id. ¶ 92).

On or about November 6, 2001, Colgate executed a Contract Extension Agreement to the Drop Lot Agreement (the "Extension") for an addition three year period, ending December 31, 2005.  (Id. ¶ 94).  Pursuant to the Extension, the rate of $35.00 was increased.[4]  (Id. ¶ 95).  Upon information and belief, Access did not implement the increase in rates and continued charging the rate of $35.00.  (Id. ¶ 96-97).  On or about December 20, 2004, Plaintiffs commenced an action asserting the following causes of action against Colgate: Breach of Contract regarding the 1998 Global Contract and the Drop Lot Agreement (Counts I and IX), Lack of Good Faith and Fair Dealing regarding the Global Contracts, Domestic Contract, and the Ocean Freight Contract (Counts II, VI, and X), and Unjust Enrichment regarding the Domestic Contract and Drop Lot Agreement (Counts V and XI).[5]  Defendant Colgate has moved to dismiss all counts, excluding Counts 4 and 7, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  LG Elecs.

---

[4] The increases are as follows: $40.00 from January 1, 2003-December 31, 2003, $45.00 from January 1, 2004 to December 31, 2004, and $50.00 for the year January 1, 2005 to December 31, 2005.  (Id. ¶ 95).

[5] Count III (Trailer Damage), Count IV (Case Charges) and Count VII (Demurrage) are also part of Plaintiffs' complaint but are not challenged in Defendant's Motion to Dismiss.  On March 22, 2005, Magistrate Judge Hedges dismissed Count III and thus, this Court need no longer rule on that aspect of the motion at this time.

Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 582-83 (D.N.J. 2001) (quoting Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).  A complaint may be dismissed for failure to state a claim "where it appears beyond any doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." Doe v. Div. of Youth and Family Servs., 148 F. Supp. 2d 462, 481 (D.N.J. 2001) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Though a court must take as true all the facts alleged, it may not "assume that the [plaintiff] can prove any facts that it has not alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  Further, on a 12(b)(6) motion, a court shall properly reject any "conclusory recitations of law" pled within the complaint. Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 179 (3d Cir. 1988).  Applying this standard of construction to Plaintiffs' Amended Complaint, the Court will now examine Defendant's motion to dismiss the selected counts.

## LEGAL DISCUSSION

A. The Global Contracts[6]

    1. **Anthem Worldwide's Standing**

Colgate first argues that Anthem Worldwide lacks standing to assert Count I (Breach of Contract) and Count II (Lack of Good Faith and Fair Dealing) because it was not a party or third-party beneficiary to the 1998 Global Contract.  Plaintiffs admit that Anthem Puerto Rico was identified in the contract as the contracting parting.  They argue, however, that Anthem Worldwide was intended to be the real party in interest to the contract between Colgate and

---

[6]Since the Amended Complaint involves four different contracts, the Court will address the claims as they relate to each contract.

Anthem Puerto Rico. Plaintiffs contend that it is premature to rule on this issue as a matter of law because the Court must consider the course of dealing between the parties. The Court agrees.

The test to determine whether a person qualifies as a third-party beneficiary is "'whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts . . . .'" Rieder Communities, Inc. v. North Brunswick Tp., 546 A.2d 563, 566 (N.J. Super. Ct. App. Div.) (quoting Brooklawn v. Brooklawn Housing Corp., 11 A.2d 83, 85 (E. & A. 1940)), certif. denied, 552 A.2d 164 (N.J. 1988); see also Werrmann v. Aratusa, Ltd., 630 A.2d 302, 305 (N.J. Super. Ct. App. Div. 1993); N.J.S.A. 2A:15-2 (a person for whose benefit a contract is made may sue on it in a court of law). "It is not necessary that an intended beneficiary be identified when the contract containing the promise is made, Restatement (Second) of Contracts § 308 (1981), and the promisee's obligation to pay the beneficiary need not be in existence at the formation of the contract. Id. § 302 illus. 3." Werrmann, 630 A.2d at 305.

According to the Amended Complaint, the conduct and course of dealings over several years of both Anthem Worldwide and Colgate show a contractual relationship between these parties. If true, this contractual relationship can be ascertained from the fact that Colgate repeatedly made payments to Anthem Worldwide in exchange for performance. Furthermore, it is alleged that Colgate never objected to this practice in their previous dealings. See Girard Bank v. John Hancock Mut. Life Ins. Co., 524 F. Supp. 884 (E.D. Pa. 1981), aff'd, 688 F. 2d 820 (3d Cir. 1982) (even in the absence of definite written terms, an enforceable agreement may arise from the parties' conduct and course of dealings). Therefore, the Court finds that it is premature to ascertain whether Anthem Worldwide qualifies as a third-party beneficiary or the real party in interest so as to assert Counts I and II under the 1998 Global Contract. Accordingly, Defendant's

motion to dismiss Count I and II of the Amended Complaint on standing grounds is denied.

### 2. Count II (Lack of Good Faith and Fair Dealing)

Count II of Plaintiffs' Amended Complaint asserts a claim for lack of good faith and fair dealing. "A covenant of good faith and fair dealing is implied in every contract in New Jersey." Wilson v. Amerada Hess Corporation, 773 A.2d 1121, 1126 (N.J. 2001) (citing Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997), cert. denied, 454 U.S. 1054 (1981). "In Sons of Thunder, Inc., supra., we reaffirmed our earlier formulation:

> In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; which means that in every contract there exists an implied covenant of good faith and fair dealing.

690 A.2d at 587 (quoting Palisades Properties, Inc. v. Brunetti, 207 A.2d 522, 531 (N.J. 1965) (citing 5 Williston on Contracts § 670, at 159-60 (3d ed. 1961)). "The obligation to perform in good faith exists in every contract including where the contract is terminable at will." Wade v. Kessler Institute, 778 A.2d 580, 584 (N.J. Super. Ct. App. Div. 2001) (citing Bonczek v. Carter-Wallace, Inc., 701 A.2d 742, 745 (N.J. Super. Ct. App. Div. 1997), certif. denied, 707 A.2d 154 (N.J. 1998)).

Anthem alleges in its Amended Complaint that Colgate failed to perform the "exclusivity" obligation in good faith -- specifically that Colgate "repeatedly . . . retain[ed] freight transportation services from providers and/or companies other than Anthem to fulfill the international freight distribution needs of Colgate and its subsidiaries." (Am. Compl., ¶ 24). As a result of Colgate's breach, Plaintiffs claim they incurred damages and monetary losses. Accepting those facts as true, the Court determines that there exists sufficient evidence for a jury to decide whether Colgate breached its obligation to perform its duties in good faith. Therefore, this Court

denies Colgate's request to dismiss Count II of the Amended Complaint.[7]

**B.    The Domestic Contract[8]**

   **1.    Claim for Unjust Enrichment (Count V)**

Count V of the Amended Complaint asserts a claim for unjust enrichment. The basis for this claim is that as a result of Colgate's failure to pay the agreed to per case rate, Plaintiffs would be deprived of the benefits of the true value of the freight services rendered. As such, it would be unjust for Colgate to retain the benefit. Colgate argues that due to the undisputed existence of the Domestic Contract, Access cannot seek a quasi-contract remedy and Count V should be dismissed.

Defendant contends that the Domestic Contract is governed by Puerto Rico law. Under Puerto Rico law, "[u]njust enrichment is a doctrine based in equity which seeks to do justice in the absence of a contractual or legal obligation, and its purpose is to avoid the inequity of a person unjustly enriching himself at the expense of another." Ocaso, S.A., Compania de Seguros Y Reaseguros v. Puerto Rico Maritime Shipping Auth., 915 F. Supp. 1244, 1263 (D.P.R. 1996) (citations omitted); see also Medina & Medina v. Country Pride Foods Ltd., 631 F. Supp. 293, 302 (D.P.R. 1986), aff'd, 901 F.2d 181 (1st Cir. 1990) (claims for unjust enrichment are "subsidiary in nature and will only be available in situations where there is no available action to

---

[7] Since the Court finds independent grounds for recovery on this claim, the Court need not address Colgate's contention that Count II should be dismissed because it is duplicative of Count I's breach of contract claim.

[8] Defendant initially moved to dismiss Count III of the Complaint, however that Count has now been dismissed without prejudice as moot in light of Magistrate Judge Hedge's instruction to Plaintiffs' counsel to provide a more definite statement as to the trailers referenced in Count III. [CM/ECF Docket Entry #17].

seek relief."). Similarly, under New Jersey law, "[t]o succeed on an action for unjust enrichment, a plaintiff must establish that a defendant received a benefit, and that the defendant's retention of that benefit would be unjust." Stearns & Foster Bedding Co. v. Franklin Holding Corp., 947 F. Supp. 790, 812 (D.N.J. 1996) (citing VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994)). Thus, whether Puerto Rico or New Jersey law governs is immaterial at this stage because the law is very similar.

While it is true that the doctrine of unjust enrichment is an equitable remedy that is only available when there is no adequate remedy at law, Duffy v. Charles Schwab & Co., Inc., 123 F. Supp. 2d 804, 814 (D.N.J. 2001), Plaintiffs are correct, that they are entitled to plead alternate theories and remedies. Fed. R. Civ. P. 8(a). At this stage of the proceedings it would be premature to dismiss this claim solely on this ground. Hence, Colgate's request to dismiss Count V of Plaintiffs' Amended Complaint is denied.

### 2. Count VI (Lack of Good Faith and Fair Dealing)

Count VI of the Complaint asserts that Colgate violated its obligation of good faith and fair dealing by "wrongfully terminating the Domestic Contract in apparent retaliation for Access' attempt to enforce the terms of the Domestic Contract." (Pl.'s Am. Compl. ¶ 62). Colgate argues that Count VI, like Count II, should be dismissed because it alleges actions that either duplicate the claims of breach of contract or are explicitly permitted by the contract at issue. The Court echoes its earlier sentiments, supra, that the trier of fact, in viewing the totality of the circumstances, must determine whether Colgate's actions under the Domestic Contract were in bad faith. Therefore, the dismissal of Count VI is denied.

**C.     The Ocean Freight Contract**

Count VIII of Plaintiffs' Amended Complaint asserts a claim for breach of the implied covenant of good faith and fair dealing.  Colgate seeks the dismissal of this Count for the same reasons it seeks the dismissal of Counts II and VI.  For the reasons set forth in Sections A(2) and B(2) of this Opinion and Order, this request is similarly denied.

**D.     The Drop Lot Agreement**

   **1.     Count IX (Breach of Contract)**

Count IX of the Amended Complaint alleges that Colgate breached the terms of the Drop Lot Agreement.  In New Jersey, in order to bring a cause of action for breach of contract, plaintiff has the burden of establishing the following elements: the formation of a contract between plaintiff and defendant, performance by plaintiff of any dependent conditions or conditions precedent, defendant's failure to perform, and resulting damage to plaintiff.  Robert E. La Blanc Associates, Inc. v. Greenfield, 1989 U.S. Dist. LEXIS 8284, at *5 (D.N.J. July 20, 1989).

Colgate contends that Plaintiffs failed to allege a contractual relationship between Access and Colgate for the payment by Colgate of certain drop lot fees, and therefore Claims IX, X, and XI, pursuant to the Drop Lot Agreement, should be dismissed.  In light of the allegations presented, the Court disagrees.  First, Colgate concedes that "Access and Colgate entered into a Drop Lot Contract."  (Def.'s Moving Brief at 22).  Second, the Complaint alleges in Count IX that the drop lot fees were negotiated by Colgate, and "the drop lot charges paid by participating carriers to Access, were being reimbursed to the participating carriers by Colgate and/or being treated as a 'pass through' to Colgate."  (Pl.'s Am. Compl., ¶¶ 90-92, 100).  Third, the Amended Complaint alleges that Colgate "began to pressure Access to reduce the rates to be charged under

the Drop Lot Agreement" because of "Colgate's need to become more competitive." (Id. ¶¶ 98, 99) (emphasis in original). As a result of Colgate's failure to perform, Plaintiffs claim they have incurred or will incur monetary losses. (Id. ¶ 109). In light of Plaintiffs' allegations, this Court finds that Count IX of the Amended Complaint does state a valid claim for breach of the Drop Lot Agreement.

    2.    **Count X (Lack of Good Faith and Fair Dealing)**

Lack of good faith and fair dealing are again asserted in Count X. Colgate seeks the dismissal of this Count for the same reasons it seeks the dismissal of Counts II, VI and VIII. For the reasons set forth in Sections A(2), B(2), and C of this Opinion and Order, this request is likewise denied.

    3.    **Count XI (Unjust Enrichment)**

In Count XI, Plaintiffs assert another claim for unjust enrichment. Colgate seeks the dismissal of this Count for the same reasons it seeks the dismissal of Count V. For the reasons set forth in Section B(1) of this Opinion and Order, this request is denied.

### CONCLUSION

For the foregoing reasons, it is on this 30th day of September, 2005, hereby

**ORDERED** that Defendant's motion to dismiss Counts I, II, V, VI, VIII, IX, X, and XI of Plaintiffs' Amended Complaint is DENIED.

DATED: September 30, 2005          /s/ Jose L. Linares
                                                      JOSE L. LINARES,
                                                      UNITED STATES DISTRICT JUDGE